IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UTILITY CONSTRUCTION SERVICES          PLAINTIFF/COUNTER-DEFENDANT

V.                             CIVIL ACTION NO. 5:24-cv-78-DCB-ASH

RICHARD ETHRIDGE, II
CECILY LARUE ETHRIDGE               DEFENDANTS/COUNTER-PLAINTIFFS

V.

ELMO ANDREW SOIGNET, III                           COUNTER-DEFENDANT

ORDER AND MEMORANDUM OPINION ON MOTION TO CHANGE VENUE

This matter comes before the Court on Counter-Defendant Elmo Andrew Soignet's Motion to Change Venue pursuant to 28 U.S.C. § 1401(a). [ECF No. 15]. Mr. Soignet maintains that by filing their counterclaim for breach of contract and seeking a TRO in this Court, the Ethridges have disregarded the forum selection clause in the relevant contract. [ECF No. 16] at 1. Having carefully considered the motion, response, and applicable law, and being otherwise fully informed in the premises, the Court finds and orders that Counter-Defendant Soignet's motion is DENIED.

I.   Background

This dispute arises out of alleged breaches of contracts relating to two separate business entities: Utility Construction Services ("Utility") and Power Group Services ("Power Group").

[ECF No. 1] ¶¶ 1, 12. The former entity is wholly owned by Mr. Soignet, while the latter is a certified Women-Owned Business Enterprise construction company with three members: Mr. Soignet, who owns 44%, and Mr. and Mrs. Ethridge, who own 5% and 51%, respectively. Id. ¶ 13. In this suit, Utility alleges that Mr. Ethridge breached his employment contract and fiduciary duties as Utility's Vice President of Operations. Id. ¶ 26. Each claim in this suit arises out of the parties' participation in a construction project referred to as the "Pine Tree Project."

Utility and Power Group were both recruited to the Pine Tree Project by Ampirical Solutions, LLC, a general contractor with which both companies had worked previously. [ECF No. 3] ¶ 3.19. Utility claims that Mr. Ethridge contracted with Ampirical on Power Group's behalf without authorization and grossly exaggerated Power Group's work on the project, attributing to Power Group profits which were properly due to Utility. [ECF No. 1] ¶ 18. In doing so, Utility alleges, Mr. Ethridge violated his employment contract and fiduciary duties to enrich himself at Utility's expense "through his improper and wrongful actions." Id. ¶ 23. Under the Power Group Operating Agreement, Mr. Ethridge was required to seek approval of all members before entering into a contract, and Mr. Soignet alleges that he failed to do so. Id. ¶¶ 17-18. The Court again notes that Mr. Soignet

was not only a co-owner of Power Group, but also Utility's sole owner.

In their reply, the Ethridges assert numerous counterclaims against both Utility, the initial plaintiff to the suit, and Mr. Soignet, whom they join as a third-party defendant. In part, the Ethridges assert that it was Mr. Soignet, not Mr. Ethridge, who breached the Power Group Operating Agreement in order to extract profits by illicit means. [ECF No. 3] ¶ 4.22. The Ethridges specifically allege that Mr. Soignet illegally ousted them from Power Group and filed suit seeking to recover from Ethridge the revenue and profits properly allocated to Power Group from the Pine Tree Project. Id. ¶ 4.16, 4.21.

In his motion, Mr. Soignet maintains that the Ethridges improperly brought in this court their claims arising out of the Power Group Operating Agreement because the agreement contains a valid forum selection clause requiring all suits to be brought "in the Northern District of Texas, Dallas Division, or in the courts of the State of Texas located in Dallas County." [ECF No. 16] at 2. Therefore, he maintains, the Ethridges' claims against Mr. Soignet for breach of the operating agreement as well as their motions for a temporary restraining order and permanent injunction should be heard in the Northern District of Texas, Dallas Division, rather than in this Court. Id. The Ethridges

3

argue that transferring the case would violate public policy by causing duplicative litigation and judicial waste. [ECF No. 19] at 7.

II.  Legal Standard

28 U.S.C. § 1404(a) provides that a district court may transfer any civil action to "any district or division to which all parties have consented." "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 62 (2013). "[T]he party defying the forum selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and "waive[s] the right to challenge the preselected forum as inconvenient." Id. at 62-63. When a valid forum selection clause exists, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation and Const., LLC, 2015 WL 5774801 at *6 (quoting Atl. Marine Const. Co., 571 U.S. at 52).

When enforcement of an otherwise valid forum selection clause would violate public policy, a Court may choose not to enforce it. The Ethridges cite case law asserting that "[t]he purpose or result of enforcing a forum selection clause should not be to multiply litigation and increase the costs of litigation between the parties." BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., 2019 WL 2017541, at *7 (E.D. Va. May 7, 2019), (citing In Re: Bavaria Yachts, 575 B.R. 540, 563 (N.D. Ga. Br. Ct. 2017); Axis Oilfield Rentals, 2015 WL 5774801 at *6 ("[A] court should not sever [claims] if... partial transfer would require the same issue to be litigated in two cases."). [ECF No. 20] at 8. In Axis Oilfield Rentals, the court declined to enforce the forum selection clause when such enforcement would require "the same issues to be litigated between the same parties in two cases," because Plaintiff's claims subject to the forum selection clause were identical to the claims not subject to it. Axis Oilfield Rentals, LLC, 2015 WL 5774801 at *6.

III. Analysis

The parties do not dispute that a valid forum selection clause exists, mandating that all suits arising out of the Power Group Operating Agreement be heard in Texas. The determinative issue, therefore, is whether any of the claims not subject to the forum selection clause are so "inextricably linked" to the

5

claims which Soignet wants to transfer that hearing the claims in two separate courts would result in duplicative litigation. [ECF No. 20] at 2. The Ethridges maintain that Mr. Ethridge's alleged dealings with Power Group and Utility must be litigated to resolve both Utility and the Ethridges' claims. Mr. Soignet asserts that "whether the [Power Group] Agreement was breached is irrelevant to" the remaining claims. Id. at 3; [ECF No. 21] at 3.

The Ethridges aver that there are at least two claims which require adjudication of a common issue: (1) the claim to be transferred, that Mr. Soignet breached the Power Group Agreement by expelling the Ethridges from Power Group; and (2) a claim to be litigated in this court, namely, Utility's for cause termination of Mr. Ethridge's employment. [ECF No. 20] at 3. Mr. Soignet alleges that Mr. Ethridge acted in bad faith towards Utility by breaching the Power Group agreement to unilaterally contract with Ampirical without proper authorization from his employer, Utility/Soignet, who happens to also be a co-owner of Power Group. In the claim sought to be transferred, the Ethridges assert that Mr. Soignet had no right to expel the Ethridges "because they had clean hands in all transactions" between Power Group and Utility. Id. at 9 [emphasis added.] Therefore, the Ethridges assert, "the issue of whether the

6

Ethridges and/or Defendant Soignet acted in bad faith runs through both cases where the issues are inextricably intertwined." Id.

Mr. Soignet, on the other hand, argues that "the only claim dependent on a finding that the [Power Group] Agreement was breached by one of its signatories is the Ethridges' claim against Soignet for breach of that agreement." [ECF No. 21] at 3. He asserts that Utility's claims against Mr. Ethridge and the Ethridges' remaining counterclaims arise out of the Utility Employment Agreement and the duties arising under that contract. Id. at 4. Because breach of the Power Group agreement is not at issue in any of the remaining claims, Mr. Soignet argues that the forum selection clause should be enforced. Id.

This Court agrees with Mr. Soignet that he does not allege any violation of the Power Group Agreement, as his suit against Mr. Ethridge arises solely out of the latter's employment agreement with and duties owed to Utility. However, the Court notes that to find that Mr. Ethridge breached his employment agreement with Utility the Court would also have to determine that his alleged action violated the Power Group Agreement, because he would be liable under both his Utility employment contract and the Power Group Agreement if he entered into the Pine Tree contracts without Mr. Soignet's knowledge. Mr. Soignet

7

claims that Mr. Ethridge violated his employment agreement with Utility by entering into multiple contracts with Ampirical on behalf of Power Group "without complying with the Operating Agreement by calling a meeting and obtaining the approval of Soignet," intentionally concealing his actions from Soignet "to personally benefit from the deal without the knowledge of Soignet or his employer, [Utility]." [ECF No. 1] ¶¶ 18, 19.

In order to litigate Mr. Soignet's claim against Ethridge, this Court would have to determine whether Ethridge failed to notify Soignet of the Ampirical/Power Group contracts and therefore whether Ethridge failed to comply with the Power Group Operating Agreement. Likewise, to litigate the Ethridges' claim that Mr. Soignet violated the Power Group agreement by expelling them from the business despite their lack of wrongdoing, the Texas court would have to determine whether Mr. Ethridge entered the contracts with Ampirical on Power Group's behalf without proper authorization from Mr. Soignet. At the core of each suit would be the issue of whether Ethridge had authorization from Soignet to enter into the Ampirical contract on Power Group's behalf. The Fifth Circuit has noted that "our jurisprudence suggests that the severance inquiry is different—and more focused on judicial efficiency—when it is combined with a section 1404 motion to transfer than when the severed case would

8

remain in the original judicial district." In Re Rolls Royce Corp., 775 F.3d 671, 680 (5th Cir. 2014).

Here, Utility sued Mr. Ethridge in this Court pursuant to a forum selection clause in the employment agreement granting this Court exclusive jurisdiction over a dispute such as this one. [ECF No. 1] ¶ 4; [ECF No. 1-1] at 9. To transfer only the Ethridges' counterclaim for breach of the Power Group agreement would require the same issue, which lies at the heart of each claim, to be adjudicated twice. Because this suit was initially and properly in this court, and because transfer of the Ethridges' counterclaim for breach of the Power Group Agreement would create judicial inefficiency, this Court finds that "extraordinary circumstances" exist such that the entire case should remain in the Southern District of Mississippi, Western Division.

The Court notes that Mr. Soignet has filed a separate motion to sever the Ethridges' claims against him for improper joinder and will address this motion in a separate opinion.

IV. Conclusion

Because transfer of one claim in this suit would require two courts to litigate the same issue, this Court is of the opinion that the motion to transfer venue should be DENIED.

IT IS THEREFORE ORDERED the Ethridges' claim against Mr. Soignet for breach of the Power Group Operating Agreement will remain in the Southern District of Mississippi, Western Division.

SO ORDERED this the 8th day of January, 2025.

                                                  /s/ David Bramlette
                                    DAVID C. BRAMLETTE III
                                    UNITED STATES DISTRICT JUDGE