```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION
```

UTILITY CONSTRUCTION SERVICES            PLAINTIFF/COUNTER-DEFENDANT

V.                            CIVIL ACTION NO. 5:24-cv-78-DCB-ASH

RICHARD ETHRIDGE, II
CECILY LARUE ETHRIDGE                    DEFENDANTS/COUNTER-PLAINTIFFS

V.

ELMO ANDREW SOIGNET, III                             COUNTER-DEFENDANT

ORDER

This matter comes before the Court on the Ethridges' ("Counter-Plaintiffs") Motion for a Temporary Restraining Order and Preliminary Injunction Against Elmo Andrew Soignet, III ("Counter-Defendant"). [ECF No. 7]. Having resolved the jurisdictional challenges presented by Soignet in his Motion to Sever [ECF No. 22] and his Motion to Change Venue [ECF No. 15], the Court now addresses the Ethridges' request for a temporary restraining order and preliminary injunction. The Court notes that the Ethridges have also requested a hearing concerning their motion for a TRO. [ECF No. 9].

I.   Background

This dispute arises out of alleged breaches of contracts relating to two separate business entities: Utility Construction Services ("Utility") and Power Group Services ("Power Group").

[ECF No. 1] ¶¶ 1, 12. The former entity is wholly owned by Mr. Soignet, while the latter was, at the time the complaint was filed, a certified Women-Owned Business Enterprise construction company with three members: Mr. Soignet, who owned 44%, and Mr. and Mrs. Ethridge, who owned 5% and 51%, respectively. Id. ¶ 13. On August 28, 2024, Mr. Soignet expelled the Ethridges from Power Group "on an unnamed 'cause' ground." [ECF No. 7] ¶ 3.

In their third-party complaint against Mr. Soignet, the Ethridges allege in part that Mr. Soignet tortiously breached the Power Group Operating Agreement by expelling the Ethridges in bad faith. [ECF No. 3] ¶ 4.21. The Ethridges further allege that Mr. Soignet allowed the company's Women-Owned Business Enterprise certification to lapse in violation of Power Group's operating agreement. Id. ¶ 4.18. As a result of these alleged breaches, the Ethridges maintain that they are entitled to injunctive relief to prevent irreparable damage.

The Ethridges allege that they are entitled to injunctive relief against Mr. Soignet to:

1. Prohibit any act by Mr. Soignet seeking to expel Mr. or Mrs. Ethridge;
2. Prohibit any act by Mr. Soignet from taking control of or making use of any Power Group funds;

3. Prohibit any act by Mr. Soignet preventing the submission of the renewal of the certification of Power Group as a Women-Owned Business Enterprise.

4. Prohibit any act by Mr. Soignet in connection with the business of PGS without approval of the members in a quorum meeting

5. Prohibit any act by Mr. Soignet to deactivate computer, email, or other devices and programs, affect paychecks, and any other action concerning the business of Power Group Services.

[ECF No. 7] at 3.

II.  Legal Standard

In order to receive injunctive relief under either a Temporary Restraining Order or a Preliminary Injunction, a party must demonstrate : (1) a substantial likelihood of success on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

III. Analysis

A. Likelihood of Success on the Merits

To evaluate whether a party is likely to succeed on the merits, "a district court must evaluate any factual conflicts or difficult questions of law." Starbucks Corp. v. McKinney, 602 U.S. 339, 144 S. Ct. 1570, 219 L. Ed. 2d 99 (2024) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.3 (3d ed. 2013)).

In this case, the Ethridges must show that they are substantially likely to prevail upon their claim against Defendant Soignet for breach of the Power Group Operating Agreement. Specifically, the Ethridges allege that Soignet breached the Power Group Operating Agreement by engaging "in a series of actions with the express purpose of stripping from PGS all of its revenue and profits for the benefit of UCS and himself. These acts are not in the best interest of PGS and thwart the very purposes for which the company was created and operated." [ECF No. 8] ¶ 3.3. These acts include expelling the Ethridges without cause in violation of the Operating Agreement, which requires a showing of "wrongful conduct including fraud, gross negligence, and intentional misconduct." Id. ¶ 3.8.

Soignet argues that he expelled he Ethridges as members of Power Group after concluding that they engaged in acts

4

constituting cause under the Operating Agreement, and that under the agreement he was not required to provide them notice of the reasons for their termination. [ECF No. 73] at 7. The facts which support the Ethridges' claim are hotly contested, both in their counterclaim and in Utility's initial cause of action. Specifically, the parties disagree as to whether Soignet was aware of the profit percentage allocated to Power Group from the Pine Tree Project. Soignet claims that he "did not review or approve any PGS bid proposal or contract that allocated 38.5% of the total Pine Tree contract to PGS, which is the contract allocation that is the central issue in this case." [ECF No. 84] at 3.

Without resolving this factual conflict, the Court cannot determine whether Soignet breached the Operating Agreement. Soignet claims he had cause to remove the Ethridges from Power Group because the actions Mr. Ethridge took regarding the Pine Tree Project were taken without complying with the Power Group Operating Agreement, and "he intentionally concealed his actions for his personal benefit." [ECF No. 73] at 7. Additionally, Soignet maintains that he held the majority in interest required to expel the Ethridges. Id. The Operating Agreement provides that "[a] member may be expelled from the Company for Cause upon a Majority in Interest vote of the Members (excluding the Member to be expelled)." [ECF No. 7-2] Section 4.12. There are only

three members of Power Group, and, excluding the Ethridges ("the parties to be expelled"), Soignet holds a majority interest. [ECF No. 84] at 7-8. Because Soignet identifies significant factual disputes, the Ethridges are unable to demonstrate a substantial likelihood of success on the merits. Therefore, the Ethridges' request for a Temporary Restraining Order and Preliminary Injunction is DENIED. The Court proceeds to evaluate the threat of irreparable injury and the balance of hardship to the parties.

  B. Substantial Threat of Irreparable Injury; Balance of Hardships to the Parties

To make a sufficient showing of irreparable harm, a party must demonstrate that the threatened harm would occur before the court can reach a decision on the merits of the case, and the party must show that there is a likelihood that the irreparable harm will occur. <u>Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm</u>, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.). When balancing the comparative hardships to the parties, a court must consider the burden that would be imposed on the defendants should the injunction be granted and the hardship that would occur to the plaintiff should it be denied. <u>Grounds for Granting or Denying a Preliminary Injunction—Balancing Hardship to Parties</u>, 11A Fed. Prac. & Proc. Civ. §

2948.2 (3d ed.). The Court now analyzes each injunction requested by Plaintiff to determine the threat of irreparable harm and the balance of hardship to the parties.

First, Plaintiff asks this Court to prohibit any act by Defendant Soignet seeking to expel or enforce any effort to expel the Ethridges. [ECF No. 7] at 3. Soignet expelled the Ethridges from Power Group Services on August 28, 2024, and the Ethridges filed their motions for a temporary restraining order and preliminary injunction on August 29, 2024. [ECF No. 7]. To the extent that the Ethridges seek reinstatement as members of Power Group, the Court cannot grant such injunctive relief, as "the purpose of a preliminary injunction is to preserve the status quo by preventing irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits." Southpoint Bank v. Origin Bank, No. 3:21-CV-156-TSL-MTP, 2021 WL 3742397 at *5 (S.D. Miss. Aug. 24, 2021). Because the Ethridges had already been expelled from Power Group when they filed their motion seeking injunctive relief, the Court cannot reinstate them as members because to do so would undo an action previously done rather than maintain the status quo.

The remaining grounds upon which the Ethridges seek a temporary restraining order and preliminary injunction all pertain to Soignet's ability to continue to operate Power Group

as its sole member. Counter-plaintiffs have failed to show irreparable injury as a consequence of Soignet's continued activities operating Power Group. Irreparable harm must be "more than speculative; there must be more than an unfounded fear on the part of the applicant." Tribal Sols. Grp., L.L.C. v. Valandra, No. 23-60233, 2023 WL 7314308 (5th Cir. Nov. 6, 2023)

The Ethridges argue that they will face irreparable damage should Soignet spend the proceeds of the Pine Tree Project and previous projects for which Power Group had been paid. [ECF No. 80] at 6. They assert that "there is no doubt that Defendant Soignet is unlawfully operating the company to the detriment of the Ethridges." Id. at 7. However, Soignet has set aside Power Group's proceeds from the Pine Tree Project into a money market account and has not used such funds. [ECF No. 72-1] ¶ 5. He furthermore explains that "other than necessary de minimis debits, [he is] not using and [has] not used funds in the PGS bank accounts" since he expelled the Ethridges. [ECF No. 84-1] at 3. He attaches the Power Group bank account, which supports his statement. Id. at 4-7. Furthermore, Soignet states that he has "taken steps to preserve emails and other electronic communications that are potentially relevant to the case." Id. ¶ 6.

The Ethridges also allege that they will suffer lost business and good will, as well as reputational harm unless this Court grants injunctive relief. [ECF No. 8] ¶ 3.14. In their initial motion, the Ethridges do not offer any evidentiary support for this allegation beyond a conclusory statement that Soignet's purpose is "clear: to take over PGS and run it as a sham by allegedly conducting business as a WBE [woman-owned business enterprise] and then stripping the profits." Id. Even if damages are impossible to quantify, as the Ethridges argue, they offer no evidence of the sort of irreparable harm which they will bear absent injunctive relief.

In their reply, the Ethridges give an example of a lost business opportunity. Mrs. Ethridge asserts that she received a call from Ampirical asking if PGS had renewed its minority contractor certificate because Ampirical had work it would like Power Group to perform. [ECF No. 80] at 7 (citing Declaration of Cecily Ethridge, [ECF No. 80-5]. Soignet urges this Court to disregard Mrs. Ethridge's alleged call with Ampirical as "textbook hearsay." [ECF No. 84] at 2. The Ethridges' one example of potential irreparable harm in the form of a lost business opportunity, unsupported by evidence, does not provide the Court a sufficient basis to find anything more than "speculative" grounds for relief.

While the Ethridges have not provided evidence to support a finding of irreparable harm to them without injunctive relief, Soignet, on the other hand, continues to operate Power Group and would suffer irreparable injury if required to terminate operations. Because injunctive relief requiring Soignet to cease operations of Power Group during this litigation would injure Soignet and Power Group, the Court finds that the balance of the hardships supports a denial of the Ethridges' request for injunctive relief.

Because the Ethridges were unable to demonstrate a substantial likelihood of success on the merits, the Court DENIES their motions for a temporary restraining order and preliminary injunction, as well as their motion for a hearing on injunctive relief. Moreover, this Court has found that the Ethridges have failed to demonstrate an irreparable injury, and that the balances of the hardships support denial of the pending motions.

Accordingly,

Plaintiffs' Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction [ECF No. 7] is DENIED without prejudice.

Furthermore,

Plaintiffs' Motion for a Hearing concerning their Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction [ECF No. 9] is DENIED.

SO OREDERED this 4th day of March, 2025.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE