IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**UTILITY CONSTRUCTION**            **PLAINTIFF/COUNTER-DEFENDANT**
**SERVICES, LLC**

**v.**            **CIVIL ACTION NO. 5:24-cv-00078-DCB-LGI**

**RICHARD ETHRIDGE, II,**
**CECILY LARUE ETHRIDGE, AND**
**TEMPEST ENERGY, LLC**            **DEFENDANTS/COUNTER-PLAINTIFFS**

**v.**

**ELMO ANDREW SOIGNET, III**            **COUNTER-DEFENDANT**

## ORDER

Pursuant to the Case Management Order (Doc. 37) Counsel for Richard Ethridge, II ("Ethridge") and Utility Construction Services, LLC ("UCS") appeared before the Court via teleconference on September 4, 2025, concerning certain discovery issues brought by Ethridge. The Court, having reviewed written outlines of the positions of the parties and argument of counsel as well as proposed resolutions, made the following rulings from the bench and formally memorializes those rulings below:

    **I.**    **Discovery Conference, 9/4/2025**

          *a. Richard Ethridge, II's Third Set of Requests for Production to Utility Construction Services, LLC*

**REQUEST NO. 18:** Produce the bid, office, and PGS slack channel posts that address (1) the Pinetree bid and/or the bidding process on Pinetree from bid formulation to approval and submission, (2) PGS involvement in the Pinetree Project, and (3) the preparation and review of the bidding for the First Solar/Ecomplexus Ampirical Project and any other project that included PGS from 2022 through August 2024.

IT IS HEREBY ORDERED that Ethridge shall submit search terms to UCS in order to allow UCS to search for slack channel posts in the bid team, office, and PGS slack channels which pertain to items (1) and (2) of request No. 18 by Friday, September 12, 2025, and UCS and Ethridge shall work together in an effort to agree on search terms and their use to identify responsive posts within the following 7 days. If an agreement cannot be reached, Counsel shall reach out to the Court to schedule a conference to resolve the issue.

**REQUEST NO. 20:** Produce the financial documents which memorialize the monthly and annual projected and actual profit and losses for UCS and PGS on the Pinetree Project since inception including all ledger entries in detail.

IT IS HEREBY ORDERED that UCS shall identify and gather the ledger entries underlying the financial profit and loss statements for UCS and PGS reflecting revenue and expenses on the Pinetree Project by Friday, September 12, 2025. The parties shall meet and confer concerning any dispute concerning the production of these documents. If an agreement cannot be reached concerning production of the documents, counsel shall reach out to the Court to schedule a conference to resolve the issue.

II.  *Ore Tenus* **Motion to Compel**

Having received no further requests for Court intervention as to the discovery issues resolved at the Telephonic Discovery Conference, the Court turns its attention to the two remaining discovery disputes. On September 4, 2025, the undersigned directed the parties to submit written briefs, no more than five pages, to the Court's chambers, concerning Request for Production No. 23 and production of UCS's entire expert report. Noting that the briefing period has expired, the Court now addresses the *ore tenus* Motions to Compel.

### III.    Standard

This Court has broad discretion over discovery disputes concerning the scope of discovery. *See* Hernandez v. Causey, 2020 WL 5412486, at *3 (S.D. Miss. Sept. 9, 2020) (quoting *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009) ([i]t is well established that the scope of discovery is within the sound discretion of the trial court.")); See also *Saucier v. Lakeview Corp.*, 2014 WL 12906612, at *1 (S.D. Miss. Dec. 30, 2014) ("[a] district court has "broad discretion" to control the procedure for obtaining discoverable material.").

In reviewing a motion to compel, courts must consider that discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). "At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016). Indeed, "[d]iscovery is not a license for the [parties] to 'go fishing' and is limited to information that 'is relevant to any party's claim or defense.'" *Barnes v. Tumlinson*, 597 Fed. App'x 798, 799 (5th Cir. 2015) (citing *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); Fed. R. Civ. P. 26(b)(1)). "Finding a just and appropriate balance in the discovery process" is thus one of the Court's key responsibilities. Willis, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2.

Rule 26(b)(1) provides that information is within the scope of discovery if it is not privileged, is relevant, and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

3

>expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Meanwhile, Rule 26(c) empowers the Court to control the procedure for obtaining discoverable information. Saucier, 2014 WL 12906612, at *1. Finally, Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and it authorizes the Court to issue an order compelling the production of such information. Fed. R. Civ. P. 37(a)(4).

## IV. Argument

### a. Request for Production No. 23

The language of the subject request provides:

**REQUEST NO. 23:** Produce all emails, texts, and other communications between Soignet, UCS, and/or PGS and Ampirical that address or reference minority contractors or PGS.

After hearing from the parties during the conference, the Court ordered that UCS and Ethridge shall submit to the Court their letter briefs via email to the Court's chambers by September 12, 2025. Parties were allowed to detail the background of the subject request for production and to discuss other discovery requests on the issue, state whether other documents have been produced, and provide positions as to the importance and/or burden imposed with the use of search terms for this request.

In the movant's letter brief, Mr. Ethridge's counsel advises that he seeks to discover communications between UCS and Ampirical, concerning "minority contractors being part of construction project bids awarded by Ampirical and Entergy." Letter Brief from Attorney Michael A. Heilman, dated 9/12/2025, p. 1. Counsel points to testimony by Mr. Soignet "that Ampirical offered to award a contract to UCS . . . but conditioned it upon a certain amount of the job being awarded to a minority contractor." *Id*. at 1-2. According to Mr. Ethridge, it was this alleged

4

communication with Ampirical that motivated Mr. Soignet to create PGS in order to "fulfill this requirement for minority contractors." *Id*. at 2. Consequently, PGS was formed as a minority contractor by Mr. Soignet and Mr. Ethridge and Mrs. Ethridge, to meet Ampirical's request. *Id*.

Mr. Ethridge alleges that UCS (and its sole member – Mr. Soignet) sought to have Ampirical redirect PGS money to UCS and Mr. Soignet; and he moves to compel production of related documents. *Id*. Specifically, in support of his counterclaims, Mr. Ethridge seeks "documents concerning (1) Ampirical's written requests, agreements, policies, desires, or demands as communicated by and between Ampirical and UCS, Mr. Soignet, or PGS, and (2) written communications which occurred between UCS, Mr. Soignet, or PGS and Ampirical concerning redirection of PGS money to UCS or Mr. Soignet." *Id*. Mr. Ethridge notes that UCS has control of PGS's email and communications, and he urges this Court to compel production of such. *Id*.

Counsel for UCS first outlines the basis for UCS's lawsuit, specifically alleging that Mr. Ethridge, while serving as UCS's Vice President of Operations, wrongfully directed significant portions of the scope of work and revenue, associated with the Ampirical/Pinetree Project, from UCS to PGS. Letter Brief from Attorney Janet A. Hendrick, dated September 12, 2025. Plaintiff's counsel notes that PGS, as a minority contractor, was controlled by Mr. and Mrs. Ethridge. *Id*. As to Mr. Ethridge's motion to compel, Plaintiff argues UCS has already undertaken an extensive effort to identify responsive documents to multiple discovery requests from Ethridge. *Id*. It asserts that it has searched and reviewed nearly 152,000 individual emails and attachments collected from eight custodians, using fourteen search terms. *Id*. After this "time-consuming" review, UCS avers it produced over 50,000 pages of documents, with the majority being emails between UCS, PGS, and Ampirical, regarding the Pinetree project and PGS. *Id*. at 1-2.

5

UCS states it was served with a Third Set of Requests for Production, including subject Request No. 23, "seeking all emails, texts, and other communications between Soignet, UCS, and/or PGS and Ampirical that address or reference minority contractors or PGS." *Id*. at 2 (emphasis omitted). UCS provides its full response and objection to Request No. 23:

> The Responding Party objects to this request because it seeks irrelevant information that is outside the scope of discovery as it seeks information that is not properly tailored to the issues in this case as to subject matter. FED. R. CIV. P. 26(b)(1). This request is so overly broad, seeking documents "that address or reference minority contractors" and does not describe an item or category of documents with reasonable particularity and is a clear fishing expedition. This request is so broad, vague, and nonspecific that the burden and expense of producing the information greatly outweighs the benefit to be obtained from production. **Subject to and without waiving the foregoing objections, the Responding Party has already produced relevant documents responsive to this request in response to Request for Production No. 3.**

*Id*. at 2 (emphasis in original). UCS states it previously produced thousands of pages of relevant documents to a previous request for production, seeking communications between UCS employees and Ampirical, "concerning the overall estimating, bidding and contracting process, the Pinetree Project or the business of PGS." *Id*. Thus, UCS challenges Request No. 23's demand for communications that address or reference minority contractors, as it contends that it has already produced all relevant, responsive communications relating to the Pinetree Project. *Id*. Further, it opposes defense counsel's suggested search terms ("minority" and "women-owned") as well as the time period sought in the Request. *Id*. Plaintiff argues PGS is the only minority contractor relevant to this case, and UCS has already produced all of its communications with Ampirical, regarding PGS. *Id*.

UCS urges this Court to allow its objection to Request No. 23 to stand, as it says UCS has already complied with its discovery obligations and produced relevant and responsive documents. *Id*. at 2-3. It also submits that UCS has incurred substantial fees related to production and review

6

of these communications. *Id*. And it submits that requiring Plaintiff to respond would cause a burden disproportionate to any alleged relevance of the documents at issue. *Id*.

As an initial matter, the Court finds that Request for Production No. 23 seeks information that is relevant to the issues in this case. As noted above, in its complaint, UCS alleges that Mr. Ethridge wrongfully directed significant portions of the scope of work and revenue, associated with the Ampirical/Pinetree Project, from UCS to PGS. Likewise, in their counterclaim, the Ethridges accuse UCS and Mr. Soignet of having Ampirical redirect PGS money to UCS. Thus, there can be no question that the information sought in the subject discovery request is relevant to the case.

Although this Court finds that Request for Production No. 23 seeks information that is relevant to the issues in this case, the Court must determine whether the request as stated is overly broad or disproportionate to the needs of the case. To determine this, the Court considers the factors set forth in Rule 26(b): (1) importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

After review of the six factors set forth in Rule 26(b)(1), the Court finds that the information sought is relevant but not wholly proportionate to the needs of the case. In part, the request as stated is overly broad and not narrowly tailored to the subject litigation. While the request seeks to discover communication between Soignet, UCS, and/or PGS, and Ampirical, the Court finds that the second portion of the request is too expansive, as it seeks ***all*** emails, texts, and other communications that address or reference ***minority contractors*** or PGS. To the extent that the request seeks information pertaining to unnamed and/or unrelated minority contractors, the

7

Court finds that the request is overly broad and outside the scope of litigation. However, as to the request for all emails, texts, and other communications that address or reference PGS, the Court finds that the request is specific and narrowly tailored to the case and the claims before the Court. Thus, the *ore tenus* Motion to Compel, as to Request No. 23, is granted in part and denied in part, in accordance with the foregoing.

    Notably, UCS avers that it has produced all relevant and responsive documents related to communications between and/or involving UCS, PGS, and Ampirical, and it opposes responding further, claiming that it has already incurred substantial fees related to processing, reviewing and producing related documents. Because the Court has narrowed the requirement, it orders UCS to review its previous document production with an eye toward the Court's ruling herein. UCS shall identify by Bates range which of its previously produced documents are responsive to Request No. 23. In addition, UCS shall also either supplement its response and document production in accordance with the foregoing or prepare and serve an affidavit attesting to its claims that it has satisfied its discovery obligation as to this request and no additional responsive documents exist as to this request. Finally, if any responsive documents are withheld on the basis of privilege, UCS shall prepare and serve a privilege log. The Court reminds parties of its ongoing duty to supplement their discovery responses, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

    In accordance with the foregoing, Defendant's *ore tenus* Motion to Compel is hereby GRANTED IN PART AND DENIED IN PART, in accordance with the foregoing. UCS shall supplement its response to Request No. 23, as set forth above, within fourteen (14) days, or by March 18, 2026.

### b. UCS's Expert Damages Report

During the telephonic conference, Mr. Ethridge argued he is entitled to review UCS's expert report in its entirety, as the report contains information that will be used against Ethridge to show damages. Defendant's counsel noted that the expert report submitted by UCS's expert witness is marked as "Confidential – Attorney's eyes only" and thereby governed by the parties' Agreed Protective Order [61] entered in this case. The expert designation deadline of Richard Ethridge, II was September 2, 2025. UCS opposed production of the entire report and asked that the Court allow it to redact profit margins from the report.

The Court ordered that, by September 12, 2025, UCS produce to Ethridge's counsel the expert report of UCS's expert witness in a form redacted as to the profit margin of UCS as proposed by UCS in its informal submissions to the Court. The redacted expert report shall be for review by Richard Ethridge, II, and Mr. Ethridge had until September 19, 2025 to move for an extension of his deadline to designate an expert witness in response to the expert report of UCS's expert witness. The parties were also directed to address their positions on whether the entire expert report should be reviewable by Richard Ethridge, II in their letter briefs to the Court.

In his letter brief, Mr. Ethridge reasserts his position that he needs access to the entire report. Letter from Attorney Michael A. Heilman, p. 2. He challenges the "attorney-eyes only designation" as to the report, arguing that UCS cannot show that the report deserves "extraordinary confidential treatment." *Id*. at 2, 4. He argues that UCS cannot meet its burden of showing that disclosure of the expert report, including financial statements, would result in disclosure of information so sensitive and confidential that if disclosed, UCS's competitive position would likely be "substantially compromised." *Id*. at 3.  Ethridge states that although he is currently working for Tempest Energy, LLC he argues UCS cannot and has not shown that Tempest is a

9

competitor of UCS. *Id*. Ethridge states UCS's financial statements in the expert report are "extremely general" and in no way would provide the Ethridges or Tempest with any competitive advantage. *Id*. Counsel asserts there is no competitive advantage protected by disallowing Mr. Ethridge to view analysis of information to which he is already largely privy. *Id*. Rather, counsel argues there is more likely to be harm to the Ethridges. *Id*. The Ethridges submit without the entire report their defense will be compromised. *Id*. at 4.

On the other hand, Plaintiff argues that UCS's profit margin is precisely the type of information entitled to protection under the "attorney-eyes only" designation, and it contends there is no basis to remove it. Letter from Attorney Scott W. Pedigo, dated 9/12/2026, p. 2. UCS asserts the redacted report fully discloses its expert's opinions, damages, methodology, and the range of profit margin used to calculate the financial impact of Ethridge's alleged wrongful conduct (9%-32.6%). *Id*. As such, it argues the redacted report enables Ethridge's counsel to challenge the expert's opinions without exposing UCS's "most commercially sensitive data." *Id*. UCS contends it operates in a highly competitive, bid-driven market, where the margins achievable are both proprietary and critical to competition. *Id*. Thus, it says disclosure of its margin would give competitors, including Ethridge's current employer, who is also a co-defendant, a blueprint for unfair competition by underbidding UCS on future projects. *Id*.

Further, UCS argues that Ethridge has no legitimate need to have access to UCS's historical profit margin, as the redacted report affords Ethridge "the assumed margins used in the report, the resulting damages figures, and the basis for each assumption." *Id*. at 3. It avers that the only information that Ethridge cannot access is UCS's actual historical profit margin or how that number was calculated. *Id*. It contends Ethridge's counsel can fully cross-examine the expert as to why and how the specified margin was selected as the low end, whether the margin is accurate,

10

and the impact on the expert's damages model if changes to the margin are made. *Id*. UCS says Ethridge does not need its historical profit margin or access to its underlying financial statements. *Id*. UCS asserts that the agreed protective order allows parties to shield non-public financial data from disclosure that could cause competitive or commercial injury. *Id*. at 2. And it urges the Court to uphold the designation and deem UCS's production of the redacted report sufficient to satisfy its discovery obligations. *Id*. at 4.

The Court concludes that the information sought in Ethridge's *ore tenus* motion to compel the full expert report is undeniably relevant here; indeed, the parties make no attempt to dispute the relevancy of the financial data at issue. Although this Court finds that the information sought is relevant to the issues in this case, the Court must determine whether the request as stated is overly broad or disproportionate to the needs of the case. After review of the six factors set forth in Rule 26(b)(1), the Court finds that the information sought is relevant but not proportional to the needs of the case. During the telephonic conference, the Court considered the parties' positions and entered an interim order directing the Plaintiff to produce the expert report with redactions to the expert's method of calculating damages. Having reviewed the parties' supplemental submissions and upon further consideration, the Court is not persuaded to compel production of the unredacted report.

Mr. Ethridge is the former VP of UCS, and he is now employed with Tempest Energy, LLC – who is both a co-defendant in this case and is also alleged to be a direct competitor of UCS. On December 10, 2024, counsel for the Ethridges and UCS filed a joint motion for protective order, wherein they submitted a proposed agreed order. *See* Doc. [58]. On December 13, 2024, the Court entered the Agreed Protective Order [61], which governs the subject issue. Pursuant to the agreed protective order, UCS produced the subject expert report under the designation of

"Confidential – Attorney Eyes Only," which meant that UCS deemed the "information produced [a]s confidential and so sensitive that it is likely, if disclosed to the opposing party, to substantially compromise the competitive position of the producing party or a non-party." [58-1] at 3. During the telephonic conference, UCS agreed to allow Defendant Cecil Ethridge only, as a party and non-attorney, to see the report, subject to the redactions. However, Mr. Ethridge asserts he has a right to review the report in its entirety, without redactions and he moves to compel this allowance. UCS objects and maintains that Ethridge needs only the unredacted portions of the report, which include the assumed margins, resulting damages figures, and basis for each assumption. UCS wishes to protect its actual historical profit margin and calculations.

Upon review of both the redacted and unredacted versions of the subject expert reports, the Court finds no legitimate basis to require Plaintiff to fully disclose the protected portions of the report. The undersigned agrees that the expert's opinions, damages, methodology, and the range of profit margin used to calculate the financial impact of Ethridge's alleged wrongful conduct is apparent in the redacted version. It further agrees with UCS's position that opposing counsel can fully cross-examine the expert using the information provided and therefore, there is no prejudice to the Ethridges.

UCS has undertaken efforts to maintain the secrecy of the protected portions of the report, while also voluntarily granting access to the non-confidential portions. The Court finds that disclosure of the information sought directly contravenes the goal of the "Attorney-eyes Only" designation, as it finds that the information is sensitive and likely to substantially compromise the competitive position of UCS's business if disclosed. As such, the Court upholds the provision of the governing Agreed Protective Order [58] to prohibit potential harm to UCS. Accordingly, Ethridge's *ore tenus* Motion to Compel the entire, unredacted expert report is hereby DENIED.

### V. Conclusion

IT IS THEREFORE, ORDERED that Defendant's *ore tenus* Motion to Compel is hereby GRANTED IN PART AND DENIED IN PART, in accordance with the foregoing. UCS shall supplement its response to Request No. 23, as set forth above, within fourteen (14) days, or by March 18, 2026.

IT IS FURTHER ORDERED that Ethridge's *ore tenus* Motion to Compel the entire, unredacted expert report is hereby DENIED.

**SO ORDERED** this the 4th day of March, 2026.

/s/LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE